METROPOLITAN LIFE INSURANCE CO., Plaintiff, *v.* JAMES J. KEEFE *et al.*, Defendants-Appellants.—(GEORGE B. JAVARAS *et al.*, Intervenors-Appellees.)

First District (2nd Division)   No. 79-1105

Opinion filed June 24, 1980.

Sapoznick, Sheridan & Freidin, of Chicago (Robert P. Sheridan, of counsel), for appellants.

Jeffrey M. Weston, of Friedman & Weston, Ltd., of Chicago, for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

In a summary judgment action, the affidavits reveal that defendants James and Emily Keefe purchased a home in 1964 and mortgaged it to Metropolitan Life Insurance Co., which made Great Lakes Mortgage Corporation its agent for collection. In 1976, the mortgagee instituted foreclosure proceedings on this property. On July 28, 1977, a decree of foreclosure was entered after defendants' default by nonappearance. Following notice, at a public sale held on September 15, 1977, petitioners Javaras and Skach purchased the property. Defendants tendered the redemption amount claimed to be owing to the sheriff on Monday, September 18, 1978, one year and three days after the foreclosure sale, and thereafter secured a certificate of redemption by court order which was subsequently vacated. The certificate was held null and void upon the trial court's conclusion that the facts did not support the intervention

·of equity to extend the period of redemption by three days. Defendants appeal.

The affidavit of James Keefe revealed, in pertinent part, that shortly after defendants purchased the home, he began to experience difficulties with Great Lakes Mortgage Corporation in that it refused to acknowledge receipt of payments, even when they were personally tendered. Further, he averred, Great Lakes refused to give him timely credit for payments made, insisted upon late charges when none were in fact due, and suggested to him that he would not have these difficulties if he would remortgage the premises at a higher rate of interest. In 1976, Keefe was served with summons concerning the foreclosure and retained Gabriel J. Aprati as his attorney. Keefe claimed that he was continually in contact with Aprati regarding the status of his case and was informed by the latter in February 1977 that the matter had been satisfactorily resolved. Keefe was to continue making monthly mortgage payments to him for transmittal to the mortgagee's attorney. These payments were made by money order monthly.

Emily Keefe's affidavit closely tracks that of her husband and reveals further that pursuant to the understanding, beginning in March 1977 and continuing through September 1978, she purchased each month a money order in the amount of $142, made payable to Great Lakes Mortgage Corporation, and transmitted it to Aprati's office. Near the end of July 1978, Mrs. Keefe learned that Aprati had died, and she contacted his office. His secretary told her that everything was alright with her case and she was to continue to make payments as before. She made further payments on August 1, 1978, and September 1, 1978, but on September 13, 1978, was called by Aprati's office and was asked to pick up her file. She went there and was given a large sealed envelope, which she did not open until that afternoon. Inside she found numerous papers relating to the foreclosure proceedings and a letter from the sheriff of Cook County, which had never been received by her or her husband prior thereto.

The contents of the Aprati envelope were the first indication that some difficulty might exist regarding the foreclosure proceedings. She read the sheriff's letter which indicated to her that she was obliged to pay the sum of $11,876.68 by September 17, 1978. From these documents, she could not tell that her house had been foreclosed. None of the money orders she had transmitted to Aprati were returned to her in the envelope. She immediately took steps to procure a loan and a new attorney to assist her, which she was not able to do until Saturday, September 16, 1978. Because of her husband's coronary condition, she did not inform him of the above described circumstances until Friday, September 15, 1978.

Following the advice of her new attorney, not present counsel, Mrs.

Keefe secured an *ex parte* order of court directing the sheriff to accept her mortgage redemption payment and issue to her a certificate of redemption. On September 19, 1978, petitioners filed their petition to vacate the previous day's order and putative redemption. Eight days later the chancellor entered an order of vacatur, left the issue of the validity of the redemption open for subsequent determination and transferred the cause to the presiding judge for reassignment. The case was then transferred to the trial judge from whose order this appeal proceeds.

Under the relevant statute (Ill. Rev. Stat. 1975, ch. 77, par. 18), the obligatory time for redemption began running on September 15, 1977, and the last day in which defendants could have redeemed was on September 15, 1978. Defendants assert, however, that courts of equity have the power, under certain circumstances, to extend the statutory period, as where the mortgagor fails to timely redeem as a result of a good faith reliance on misinformation from a public official, citing *Skach v. Sykora* (1955), 6 Ill. 2d 215, 127 N.E.2d 453. Defendants claim that in the present case, the only knowledge they had concerning the final date for redemption was the letter from the Sheriff indicating that date to be September 17, 1978, when in fact the last day by statute was September 15. They tendered the necessary amount on September 18, a Monday, because September 17 was a Sunday, and defendants conclude that equity should therefore permit the redemption.

In *Skach v. Sykora*, most heavily relied upon by defendants, a decree of foreclosure was entered and the mortgagor's land was subsequently sold at public auction by the master of chancery. Within the year after the sale, the mortgagor telephoned the master and inquired as to the amount of money that would be necessary to redeem the property and within the one year period he paid that amount to the master. After the one-year period had expired, the mortgagor learned for the first time that the master had miscalculated the amount due, using five percent interest instead of six percent. The mortgagor asserted that equity should allow him to pay the balance after the deadline so that he could redeem the land. The purchasers claimed that the right of redemption had not been invoked because the proper statutory amount had not been paid within the one year period. The supreme court held that equity would allow an extension. The court went on to discuss two general situations when an extension will be given in the redemption period: (1) "equity will grant relief where the honest attempt of the landowner is frustrated by the mistake, negligence or other fault of the collector" (6 Ill. 2d 215, 223); or (2) " 'where there are irregularities, fraud or circumstances of unfairness connected with the sale, a court of equity may allow redemption upon equitable terms after the time for redemption has expired.' " (6 Ill. 2d 215, 223.) Because the mortgagors' "attempt to redeem was in perfect good

faith, [and] it was defeated by the mistake of the master in chancery for which [the mortgagors] were in no manner responsible * * *" (6 Ill. 2d 215, 224), the court permitted the redemption period to be extended. To the same effect is *Phoenix Mutual Life Insurance Co. v. Legris* (1975), 30 Ill. App. 3d 678, 334 N.E.2d 399, also cited by defendants.

Defendants assert that they acted in good faith reliance on the sheriff's misleading letter and therefore tendered payment on September 18. The trial court accepted this good faith as true for purposes of the summary judgment motion. Petitioners argue, however, that *Sykora* is not controlling because there the mortgagor had rendered substantial compliance within the one-year period whereas at bar there was no compliance whatsoever within the one year and in *Sykora* the public official's error resulted in partial compliance within the year, not complete noncompliance. Petitioners also assert that defendants' attorney knew or should have known of the date of the sale because of the letter in his file; therefore, he must be deemed to have known that the statutory redemption period was one year from the date of sale. As a result, defendants should be imputed with the knowledge and bound by the acts of their attorney, citing *Danforth v. Checker Taxi Co.* (1969), 114 Ill. App. 2d 471, 253 N.E.2d 114. We disagree.

■■ In the present case defendants' attorney died in July of 1978, according to Mrs. Keefe's affidavit; whatever knowledge may have been possessed by him with respect to the appropriate dates of sale were no longer available to defendants thereafter. Mrs. Keefe claims to have seen the sheriff's letter describing the erroneous date for the first time on the eve of the final date of redemption, upon which she relied to her detriment. From these facts, defendants in good faith could have considered the sheriff's letter as reflecting the actual statutory redemption date, September 17, 1978, a Sunday, which by statute would have been extended to Monday, September 18, 1978 (Ill. Rev. Stat. 1977, ch. 131, par. 1.11). Their effort to redeem on September 18, 1978, therefore might well come within the equitable exception rule of *Skach v. Sykora* and *Phoenix Mutual Life Insurance Co. v. Legris* as a bona fide attempt by landowners frustrated in their efforts to redeem their property by an official mistake, thereby meriting an extension of the redemption date. See also *Gage v. Scales* (1881), 100 Ill. 218.

● 2 Summary judgment is properly awarded where no genuine, triable issues of material fact emerge from the pleadings or affidavits and the issues can be decided solely as questions of law. (*Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 392 N.E.2d 1352; *Littrell v. The Coats Co.* (1978), 62 Ill. App. 3d 516, 519-20, 379 N.E.2d 293.) In this instance, the facts emerging from the affidavits and exhibits appear to support rather than to defeat the attempted

redemption. Under these circumstances, the order granting summary judgment was in error and must be reversed and the cause remanded for trial.

At the trial, among those facts which should be demonstrated to the satisfaction of the chancellor are the circumstances under which the sheriff's letter, dated February 16, 1978, and addressed to defendant James J. Keefe at his home was never received by defendants, or seen by either of them, until September 13, 1978, as well as other facts contained within the affidavits which appear to be beyond the affiants' personal knowledge.

Reversed and remanded.

STAMOS and DOWNING, JJ., concur.